BENJAMIN M. O'DONNELL (SBN 309119)
**GILBERT & SACKMAN**
**A Law Corporation**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Facsimile: (323) 937-3139
email: bodonnell@gslaw.org

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FATIMA WACHUKU,<br><br>    Plaintiff,<br><br>       v.<br><br>JETBLUE AIRWAYS CORPORATION, a Delaware corporation,<br><br>    Defendant. | Case No. 2:20-CV-1061<br><br>Hon.<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL** |

Plaintiff FATIMA WACHUKU ("Wachuku" or "Plaintiff") avers as follows:

### I. PARTIES, JURISDICTION, AND VENUE

1.1     Plaintiff Fatima Wachuku is a United States citizen who resides in Atlanta, Georgia.

1.2     Defendant JetBlue Airways Corporation is a Delaware corporation doing business in California. The company will be referred to as "JetBlue."

1.3     The federal district court has jurisdiction over this cause under 28 U.S.C. § 1331.

1
COMPLAINT

1.4     Venue is proper in the Central District of California because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## II.     FACTS

2.1     Fatima Wachuku is an African American woman with dark colored skin.

2.2     Ms. Wachuku contracted with JetBlue to fly on February 6, 2016, from Burbank, California (BUR) to New York, New York (JFK) on JetBlue Flight # 358 (the "Contract").

2.3     Under the Contract, JetBlue had the duty to bring Ms. Wachuku from California to New York on February 6.

2.4     JetBlue did not meet its duty of transporting Ms. Wachuku from California to New York on February 6.

2.5     Instead, JetBlue removed Ms. Wachuku from her scheduled flight under the threat of arrest.

2.6     JetBlue did not issue Ms. Wachuku any Notice to Cease Objectionable and Illegal Behavior prior to removing her from the flight.

2.7     Under the facts and circumstances presented, it was a violation of JetBlue's policies and procedures to not issue Ms. Wachuku a Notice to Cease Objectionable and Illegal Behavior.

2.8     According to JetBlue's Flight Attendant Manual and its procedures for removing passengers while on the ground, a Notice to Cease Objectionable and Illegal Behavior is to be issued by the crew in response to behavior alleged to be physically abusive.

2.9     One purpose for issuing a Notice to Cease Objectionable and Illegal Behavior is to gain compliance from the passenger, so the passenger may remain onboard.

2.10   Immediately after JetBlue removed Ms. Wachuku from her scheduled flight, JetBlue rebooked her on Flight # 358 BUR-JFK, departing February 7, the next day.

2.11   Ms. Wachuku was immediately rebooked for JetBlue's next BUR-JFK flight because the company knew she was not a threat to the safety or security of JetBlue's crew or passengers.

2.12   Under the Guidance for Airline Personnel on Non-Discrimination in Air Travel issued by the U.S. Department of Transportation, Office of the General Counsel, Office of Aviation Enforcement and Proceedings ("the USDOT guidance document"), after a passenger has been cleared to fly by the appropriate authorities, the air carrier should allow that individual to re-board the same aircraft so long as the aircraft has not yet departed and there is no other legitimate reason for refusing to carry the passenger.

2.13   Under the USDOT guidance document, if a pilot continues to refuse to allow the passenger on board after he has been cleared to fly by the appropriate authorities, the Department would likely consider the pilot's decision to be unlawful discrimination and an unfair practice absent additional facts and information.

2.14   JetBlue's Ground Security Coordinator was the appropriate authority for clearing Ms. Wachuku to fly.

2.15   Ms. Wachuku was removed from her flight because one of JetBlue's flight attendants, Cindy Pancerman, told the Captain that she refused to work unless Ms. Wachuku was removed from the flight.

2.16   Ms. Pancerman is Caucasian.

2.17   JetBlue had a responsibility to conduct a reasonable inquiry into the facts alleged by Ms. Pancerman as support for the denial of boarding and removal of Ms. Wachuku from Flight # 358.

2.18   JetBlue failed to conduct a reasonable inquiry into the facts supporting

the denial of boarding and removal of Ms. Wachuku from Flight # 358.

2.19   Ms. Pancerman reported to JetBlue that she had been in the aisle closing bins when Ms. Wachuku allegedly approached Ms. Pancerman and began complaining that the overhead bins by her seat were full.

2.20   Ms. Pancerman reported that she went to open the bins to see if there was space and that Ms. Wachuku allegedly put her hand on Ms. Pancerman's arm and started to push her.

2.21   Ms. Pancerman reported that she asked Ms. Wachuku why she was pushing her and that Ms. Wachuku allegedly said, "You are in my way, move!" and continued pushing Ms. Pancerman.

2.22   Ms. Wachuku did not behave in the way Ms. Pancerman claimed.

2.23   Upon information and belief, Ms. Pancerman met with a Ground Security Coordinator (GSC) in the plane's cockpit about the alleged incident, at which time she told the GSC that Ms. Wachuku pushed her, called her "racist," and said that she wanted Ms. Wachuku off the flight.

2.24   Pursuant to federal regulation, JetBlue must designate and use a Ground Security Coordinator for each flight departure in order to carry out the GSC duties specified in JetBlue's security program.

2.25   Ms. Wachuku told Ms. Pancerman that she is "racist," and that there was no other reason for Ms. Pancerman to create a commotion like she had based on a lie.

2.26   Ms. Wachuku also spoke to nearby white passengers in the presence of Ms. Pancerman about how Ms. Pancerman was mistreating her, and the white passengers agreed that she was being mistreated.

2.27   JetBlue's Ground Security Coordinator spoke with Ms. Wachuku.

2.28   The GSC reported to JetBlue that he asked Ms. Wachuku what had happened and she said she was having trouble putting her bags into the overhead

bin, and that Ms. Pancerman approached her and told her to use a different bin.

2.29   The GSC reported to JetBlue that Ms. Wachuku told him she stumbled and accidently backed into Ms. Pancerman; and that Ms. Pancerman began arguing with her, saying that Ms. Wachuku purposefully pushed her. The GSC reported that Ms. Wachuku had tried to explain to Ms. Pancerman that she did not purposefully push her and then called her "racist."

2.30   The GSC asked Ms. Pancerman to allow Ms. Wachuku stay on the flight, as she was not a threat, but instead was "really nice" and compliant.

2.31   Upon information and belief, Michael Saba (or Michael Saba Habib) is the GSC described above.

2.32   After meeting with the Ground Security Coordinator, Ms. Pancerman met with the Captain of JetBlue Flight # 358, Evangelos Constantinou.

2.33   Ms. Pancerman reported to Captain Constantinou that Ms. Wachuku had a confrontation with her, called her "racist," and requested her name and information in order to file a complaint with JetBlue.

2.34   Ms. Pancerman then told Captain Constantinou that she refused to work the flight unless Ms. Wachuku was removed.

2.35   As these events with Ms. Wachuku were occurring, another event was also occurring on JetBlue Flight # 358, involving a different black female passenger.

2.36   Upon information and belief, this other black female passenger was assigned Seat 24F ("the black passenger in 24F").

2.37   Similar to Ms. Wachuku, the other black female passenger was deemed to be compliant and able to fly by JetBlue's Ground Security Coordinator, but was nevertheless removed from the flight.

2.38   The GSC reported to JetBlue that he was told by one of the flight attendants that the passenger sitting near Seat 24F seemed intoxicated and incoherent.

2.39  The GSC spoke to the black passenger in 24F and reported to JetBlue that he did not believe she seemed intoxicated, nor smell of alcohol. He further reported to JetBlue that he asked her questions, including asking her to put on her seatbelt and to put her bag underneath the seat in front of her, and that she complied.

2.40  The GSC spoke with the flight attendants and reported that the black passenger in 24F complied and was able to fly.

2.41  The flight attendants nevertheless wanted the black passenger in 24F removed, which led JetBlue to call airport police and have her forcibly removed.

2.42  JetBlue did not issue the black passenger in 24F a Notice to Cease Objectionable and Illegal Behavior prior to removing her from the flight.

2.43  Under the facts and circumstances presented, it was a violation of JetBlue's policies and procedures to not issue the black passenger in 24F a Notice to Cease Objectionable and Illegal Behavior.

2.44  Ms. Wachuku observed JetBlue's efforts to remove the black passenger in 24F, in addition to a black male passenger seated nearby her, causing Ms. Wachuku to say something to the effect that "only black people are being removed from this flight." Flight attendant Lisa Hill heard Ms. Wachuku make this remark and reported it to JetBlue.

2.45  Three police officers entered from the front of the aircraft, while a fourth officer entered from the back.

2.46  As soon as the airport police arrived, Ms. Wachuku left the plane.

2.47  To the best of Ms. Wachuku's recollection, it was JetBlue's GSC (Michael Saba Habib) who told her she had to get off the plane.

2.48  Upon information and belief, GSC Michael Saba Habib was told by Captain Constantinou to give Ms. Wachuku the direction to disembark.

2.49  The black passenger in 24F refused to get off the flight when instructed. The police handcuffed the black passenger in 24F and carried her off the plane.

2.50   Upon information and belief, the black passenger in 24F was arrested.

2.51   After Ms. Wachuku disembarked the plane, she spoke with Kiarke Barrett, a JetBlue supervisor at the Burbank airport. Mr. Barrett is a light-skinned black male.

2.52   Mr. Barrett asked Ms. Wachuku what was going on, and she told him that she was dealing with racism by JetBlue and that the company was kicking the black people off the plane.

2.53   Ms. Wachuku told Mr. Barrett how she accidently bumped into Ms. Pancerman, and how Ms. Pancerman claimed Ms. Wachuku pushed her on purpose.

2.54   Mr. Barrett told Ms. Wachuku that JetBlue is not a racist airline. When Ms. Wachuku continued to complain that her treatment was based on racism, Mr. Barrett told her that she could "gladly fly another airline."

2.55   Mr. Barrett then booked Ms. Wachuku on the next flight between Burbank and JFK. It was not departing until the next day.

2.56   Ms. Wachuku asked Mr. Barrett to provide or pay for transportation by taxi and for accommodations at a hotel, which JetBlue refused to provide.

2.57   Two days later, on February 8, 2016, Ms. Wachuku sent JetBlue a written complaint, in which she reported that she was "racially targeted" by Ms. Pancerman and yelled at by Mr. Barrett.

2.58   In the February 8th complaint, Ms. Wachuku described having her back to Ms. Pancerman when she bumped into her and was then told to "stop pushing" Pancerman.

2.59   In the February 8th complaint, Ms. Wachuku denied pushing Ms. Pancerman. Ms. Wachuku did not push Ms. Pancerman.

2.60   On February 10, 2016, JetBlue responded to Ms. Wachuku's complaint. In its response, JetBlue apologized to Ms. Wachuku for inappropriate and unprofessional conduct by Ms. Pancerman, and for the distress and frustration she

caused.

2.61   JetBlue told Ms. Wachuku that her complaint was forwarded to Inflight and Airport Leadership for an internal review and individual coaching opportunity to improve service for the future.

2.62   JetBlue has no record of forwarding Ms. Wachuku's discrimination complaint to Inflight and Airport Leadership.

2.63   The company gave Ms. Wachuku a JetBlue credit of $50 as an invitation for her to fly with the airline again.

2.64   On February 11, 2016, in reply to JetBlue's response, Ms. Wachuku wrote that she wished to file a racial discrimination complaint against both Ms. Pancerman and JetBlue's Burbank Airport Supervisor. Her February 11th correspondence said that Ms. Pancerman was intentional in seeking to have Ms. Wachuku removed from the plane when she had done nothing wrong.

2.65   Ms. Wachuku reported to JetBlue how Michael "vouched" for her, but that Ms. Pancerman continued to protest that she wanted Wachuku off, which then occurred.

2.66   Ms. Wachuku reported to JetBlue that JetBlue's Burbank airport supervisor was extremely rude to her when she complained about being racially discriminated against, and that he refused to provide her a hotel or taxi.

2.67   JetBlue has no record of investigating Ms. Wachuku's discrimination complaint, and in fact the company conducted no investigation or internal review in response to Ms. Wachuku's complaint.

2.68   JetBlue has no record of coaching Ms. Pancerman or Mr. Barrett in response to Ms. Wachuku's complaint, and in fact JetBlue gave Ms. Pancerman and Mr. Barrett no coaching, reprimand, or any other corrective action as a result of Ms. Wachuku's complaint.

2.69   Ms. Wachuku had the right to all the benefits, privileges, terms, and

conditions of the contractual relationship with JetBlue, and in violation of the law, JetBlue impeded and circumvented her right to enforce the full and equal benefit of her contract to fly from Burbank, California to New York, New York, on February 6, 2016, as was enjoyed by white citizens who were passengers on the JetBlue flight.

2.70   Approximately two years later, in January 2018, Ms. Pancerman made accusations against an elderly black passenger, Abdikarim Karrani, alleging that he pushed her while onboard JetBlue Flight # 263, travelling from New York, New York (JFK) to Seattle, Washington (SEA).

2.71   JetBlue had the police in Billings, Montana escort Mr. Karrani off of Flight # 263, which other passengers observed, causing Mr. Karrani humiliation and significant distress.

2.72   JetBlue failed to conduct a reasonable inquiry into the facts alleged by Ms. Pancerman as support for the removal of Mr. Karrani from Flight # 263.

2.73   Several passengers on Flight # 263 who were unrelated to Mr. Karrani spoke to the Captain and expressed to him that Mr. Karrani did nothing wrong and did not deserve to be removed from the flight. Two of these passenger witnesses unrelated to Mr. Karrani gave written statements to the police to that effect.

2.74   Mr. Karrani posed no danger to anyone on the JetBlue flight, and JetBlue had no reasonable belief that Mr. Karrani might have endangered JetBlue's crew or passengers.

2.75   The Billings police officer found that Mr. Karrani did not assault Ms. Pancerman or commit any other crime. He did not arrest Mr. Karrani, nor charge him with a crime. The police, however, removed Mr. Karrani from the flight, because Ms. Pancerman said she was "afraid" of Mr. Karrani and JetBlue's Captain asked the police to remove him from the flight.

2.76   After Flight # 263 landed in Billings, Montana, it was delayed approximately three hours, while a new plane and crew arrived to pick up the

passengers, who were made to disembark the original plane.

2.77 Mr. Karrani could have continued on with the other passengers to Seattle on the second plane if JetBlue had allowed him to do so.

2.78 Instead, after he was removed from the plane, JetBlue refused Mr. Karrani further passage to Seattle, and made no arrangements for him stay overnight in Billings, Montana. Mr. Karrani had to pay for a hotel room in Billings with cash, and with the little cash that he had left, he purchased a ticket on Delta the following day so he could return home to Seattle.

2.79 Mr. Karrani subsequently asked the JetBlue Supervisor at the Seattle-Tacoma airport for a refund of cost of his Delta ticket home. None was provided.

2.80 On or about January 22, 2018, Jeff Roberts, a Caucasian passenger from JetBlue Flight # 263, JFK-SEA, contacted JetBlue to report Ms. Pancerman having Mr. Karrani removed from the flight "with a false statement."

2.81 Mr. Roberts reported that the film from the cockpit door should be reviewed, as Ms. Pancerman made a "false claim" against Mr. Karrani.

2.82 In a follow-up message sent on January 24, 2018, Mr. Roberts asked to have a "formal complaint" filed against Ms. Pancerman.

2.83 JetBlue responded to Mr. Roberts by providing him $100 JetBlue credit.

2.84 JetBlue has no record of investigating Mr. Roberts' complaint, and in fact it conducted no investigation or internal review in response to Mr. Roberts' complaint.

2.85 JetBlue has no record of coaching Ms. Pancerman in response to Mr. Roberts' complaint, and in fact JetBlue gave Ms. Pancerman no coaching, reprimand, or any other corrective action as a result of Mr. Roberts complaint.

2.86 JetBlue did not apologize to Mr. Karrani for the harm it caused him.

2.87 Mr. Karrani had the right to all the benefits, privileges, terms, and

conditions of the contractual relationship with JetBlue, and in violation of the law, JetBlue impeded and circumvented Mr. Karrani's right to enforce the full and equal benefit of his contract to fly from New York to Seattle as was enjoyed by white citizens who were passengers on the JetBlue flight.

2.88   Ms. Pancerman continues to work for JetBlue as a flight attendant.

2.89   JetBlue's acts and omissions have harmed Ms. Wachuku and Mr. Karrani, and they were malicious, oppressive or in reckless disregard of their rights.

2.90   JetBlue is responsible for the acts and omissions of their officers, agents and employees under the legal doctrine of respondeat superior.

### III.   FIRST CAUSE OF ACTION FOR DISCRIMINATION

3.1   Plaintiff re-alleges the facts set forth in paragraphs 2.1-2.90 above and incorporates the same by reference.

3.2   JetBlue's decisions to remove Ms. Wachuku from and deny her boarding on JetBlue Flight # 358, and the hostile treatment that preceded and followed her removal from the flight were owing to Plaintiff's race and color.

3.3   Plaintiff race and color were motivating factors in JetBlue's decisions to remove Ms. Wachuku from and deny her boarding on JetBlue Flight # 358, and in the hostile treatment that preceded and followed her removal from the flight.

3.4   These facts state a claim for discrimination under 42 U.S.C. § 1981.

### IV.   SECOND CAUSE OF ACTION FOR RETALIATION

3.5.   JetBlue's decisions to remove Ms. Wachuku from and deny her boarding on JetBlue Flight # 358, and the hostile treatment that preceded and followed her removal from the flight were owing to Plaintiff's opposition to conduct reasonably believed to be discrimination.

3.6   Plaintiff's opposition to conduct reasonably believed to be discrimination was a motivating factor in JetBlue's decisions to remove Ms. Wachuku from and deny her boarding on JetBlue Flight # 358, and in the hostile

treatment that preceded and followed her removal from the flight.

3.7   These facts state a claim for retaliation under 42 U.S.C. § 1981.

## V. PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief as follows:

4.1   Contract damages;

4.2   Out of pocket damages owing to Ms. Wachuku's removal from the JetBlue flight;

4.3   Nonmedical damages for emotional harm, including, but not limited to, loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, injury to reputation, fear, and humiliation;

4.4   Punitive damages;

4.5   Injunctive relief requiring JetBlue employees to receive training regarding race-related implicit bias and on USDOT Guidance for Airline Personnel on Non-discrimination in Air Travel;

4.6   Declaratory relief;

4.7   Reasonable attorney's fees and costs;

4.8   Whatever further and additional relief the court shall deem just and equitable.

Dated: January 31, 2020              Respectfully submitted,

**GILBERT & SACKMAN**
A Law Corporation


By:   /s/Benjamin M. O'Donnell
        Benjamin M. O'Donnell
        *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial by a jury of twelve as provided by Rule 38(a) of the Federal Rules of Civil Procedure and Local Rule 38-1 of this court.

**GILBERT & SACKMAN**
A Law Corporation


By: /s/Benjamin M. O'Donnell
    Benjamin M. O'Donnell
    *Attorneys for Plaintiff*